UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MYCOGEN CORPORATION and | ) | |
| MYCOGEN PLANT SCIENCE, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:04-cv-0573-DFH-WTL |
| | ) | |
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON PENDING MOTIONS

Pursuant to 35 U.S.C. § 146, Mycogen Corporation and Mycogen Plant Sciences, Inc. ("Mycogen") have appealed a decision of the Patent and Trademark Office's Board of Patent Appeals and Interferences ("the Board") in favor of defendants Monsanto Company and Monsanto Technology, Inc. ("Monsanto"). Mycogen challenges the Board's grant of judgment on priority of invention in favor of Monsanto and also challenges the Board's denial for untimeliness of Mycogen's request to challenge the patentability of Monsanto's principal claim. Monsanto has moved for summary judgment on both of these issues. Both parties have moved to exclude witness testimony. For reasons stated below, Monsanto's motions are denied and Mycogen's motion to exclude is granted.

I.      *Priority of Invention*

A.    *Summary Judgment Standard*

In considering a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the court does not try to determine the credibility of conflicting evidence or choose among reasonable inferences that might be drawn from the evidence.  The court must consider all evidence in the light reasonably most favorable to Mycogen, giving it the benefit of conflicts in the evidence and any favorable and reasonable inferences that could be drawn from the evidence. See *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

B.    *Undisputed Facts*

In light of the applicable standard, the court assumes the following facts are true for purposes of Monsanto's motion for summary judgment on the issue of priority of invention.   *Bacillus thuringiensis* ("Bt") is a naturally-occurring bacterium found in soil.  Bt produces a protein that kills certain crop-destroying insects, and this characteristic has drawn the attention of scientists who want to harness this power to protect valuable agricultural crops.  One way in which scientists have sought to use Bt is through genetic engineering, by finding Bt genes that give it the pesticidal effects and trying to introduce those genes into the genetic material of the crops themselves.  Simply splicing the Bt genes into crops has produced some limited pesticidal qualities in the crops, but scientists were disappointed by the limited effectiveness.  For more details on the underlying

science and the research in question, Judge McKelvie's opinion in *Mycogen Plant Science, Inc. v. Monsanto Co.*, 61 F. Supp. 2d 199,  206-09 (D. Del. 1999), is very helpful.

The research underlying this patent dispute dates back to the 1980s when at least three teams of scientists began working on ways to modify or synthesize a Bt gene so that it would, when introduced into plants such as corn and cotton, result in heightened levels of proteins toxic to insect pests.  In general, the researchers tried to take advantage of the fact that the DNA "alphabet" of sequences of three nucleotides (called "codons") that code genetic information has multiple ways of coding for specific amino acids.  Different types of organisms differ in the ways that their genes code for the same amino acids.  One way of describing the invention at issue here is that scientists can replace some of the Bt codons with codons that are more like the codons used in the plants to which the Bt genes are being transferred, which has the effect of enhancing greatly the pesticidal qualities of the genetically modified crops.  The method has been a great success commercially.  Disputes between Monsanto and Mycogen over rights to the method have been the subject of two district court actions and appeals to the Federal Circuit.[1]

---

[1]See *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 61 F. Supp. 2d 199 (D. Del. 1999), *aff'd*, *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001) (the "California appeal").

An "interference" is a specialized administrative proceeding before the Board of Patent Appeals and Interferences to resolve issues of priority when more than one person claims to have invented the same invention. See 35 U.S.C. § 135. The three-way interference at issue here ("the '781 Interference") was declared on November 7, 1996, between U.S. Patent No. 5,380,831 ("the '831 patent"), held by Mycogen scientist Michael J. Adang, and others (collectively, "Adang"), U.S. Patent Application No. 08/434,105 held by Monsanto scientists Fischhoff and Perlak (collectively, "Fischhoff"), and U.S. Patent Application 07/827,906 held by scientists Barton and Miller (collectively, "Barton").

Count 2 of the interference included several claims by Barton, Fischhoff, and Adang. Monsanto owns both the Fischhoff and Barton applications. It eventually dropped Barton from the proceeding to pursue only the Fischhoff application.[2] Fischhoff claim 3 and Adang claim 1 are representative of their respective claims. The parties agree that this entire action can be decided on the priority and validity as between Fischhoff claim 3 and Adang claim 1. Fischhoff claim 3 recites:

> 3.    A method for modifying a wild-type structural gene sequence which encodes an insecticidal protein of *Bacillus thuringiensis* to enhance the expression of said protein in plants which comprises:

---

[2]The original count in the interference was changed from Count 1 to Count 2 after the interference was redeclared, as discussed in more detail in Part II of this entry.

> a) removing polyadenylation signals contained in said wild-type gene while retaining a sequence which encodes said protein; and
>
> b) removing ATTA sequences contained in said wild-type gene while retaining a sequence which encodes said protein.

Bd. Dec. at 135-36.  Adang claim 1 recites:

> 1. A method of designing a synthetic *Bacillus thuringiensis* gene to be more highly expressed in plants, comprising the steps of:
>
> a) analyzing the coding sequence of a gene derived from a *Bacillus thuringiensis* which encodes an insecticidal protein toxin, and
>
> b) modifying a portion of said coding sequence to yield a modified sequence which contains a greater number of codons preferred by the intended plant host than did said coding sequence.

Bd. Dec. at 88-89.

The Board entered its final decision on January 29, 2004, finding that Monsanto's scientists were the first to successfully reduce the invention to practice.  This finding entitled Monsanto to priority of invention unless Mycogen both conceived of the invention before Monsanto's scientists and exercised reasonable diligence in attempting to reduce the invention to practice.  35 U.S.C. § 102(g). The Board found that Mycogen neither conceived of the invention before Monsanto nor exercised reasonable diligence in reducing the invention to practice. Based on those findings, the Board ordered that judgment on priority of invention

be entered in favor of Fischhoff and against Barton and Adang.  In this action, Mycogen has conceded that Monsanto first reduced the invention to practice, but it has challenged the Board's findings on conception and diligence.

C.   *Discussion*

Patent interference proceedings are governed by 35 U.S.C. § 135 and are designed to determine which of two or more parties claiming the "same patentable invention" was first to invent the subject matter of the invention in dispute.   *Eli Lilly & Co. v. Bd. of Regents of the Univ. of Wash.*, 334 F.3d 1264, 1267 (Fed. Cir. 2003), citing *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1100-01 (Fed. Cir. 1994).  The scope of the contested subject matter is defined by the interference "count."  37 C.F.R. § 1.601(f).  Priority of invention "belongs to the first party to reduce the invention to practice unless the other party can establish that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing the invention to practice."  *Eaton v. Evans*, 204 F.3d 1094, 1097 (Fed. Cir. 2000), citing 35 U.S.C. § 102(g).  A losing party may seek judicial review in a district court of the Board's determinations in an interference.  35 U.S.C. § 146.

Monsanto's motion for summary judgment on the priority issue focuses solely on the question of Mycogen's diligence.  Given the undisputed fact that Monsanto was the first to reduce the invention to practice, to survive summary

judgment Mycogen must identify a genuine issue of material fact on the issue of diligence.

Monsanto argues that the Federal Circuit's decision in *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001) (the "California appeal"), collaterally estops Mycogen from asserting that it was diligent in reducing to practice any of the claims in interference Count 2. In the California appeal, Mycogen sued Monsanto for infringement of Mycogen's '831 patent, the same patent involved in the interference underlying this case. The Federal Circuit reversed the district court's grant of summary judgment to Monsanto because genuine issues of fact existed regarding the date of Monsanto's conception of the invention. 252 F.3d at 1309. However, the Federal Circuit affirmed the district court's finding that certain of Mycogen's research efforts — those focused on identifying "problem regions" of the *Bt* gene — did not constitute reasonable diligence in reducing the invention to practice. *Id.* at 1315.

The Seventh Circuit has explained that, under the doctrine of collateral estoppel or issue preclusion, "an issue may not be litigated if the following conditions are met: (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action." *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000) (collecting cases). The controlling issue here is

whether the Federal Circuit determined the identical issue of diligence in the California appeal.  Whether the issues are identical is a question of law.  *Id.*, citing *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 922 (7th Cir. 1997).

The claims at issue in the California appeal included Adang claim 1, which is part of Count 2 as designated by the Administrative Patent Judge ("APJ") in this case.  But the California appeal did not address at all Fischhoff claim 3, which is also part of Count 2 in the interference designated by the APJ in this case. Mycogen agrees that the Federal Circuit's decision in the California appeal collaterally estops it from asserting its diligence with respect to reducing Adang claim 1 to practice.  Thus, Mycogen can survive summary judgment in this case only if it raises a genuine issue of fact as to whether it was diligent in trying to reduce Fischhoff claim 3 to practice.

Monsanto argues that Mycogen cannot raise a genuine issue of fact regarding its diligence for Fischhoff claim 3 because the Federal Circuit's decision in the California appeal collaterally estops Mycogen from asserting that claim just as it does for Adang claim 1. When the APJ in this case declared an interference between Fischhoff claim 3 and Adang claim 1 and placed them together in a count, he identified them as a matter of law as "the same patentable invention." See 37 C.F.R. § 1.601(i) ("An interference may be declared . . . when, in the opinion of an examiner, the applications contain claims for the same patentable

invention.") and § 1.601(f) ("each count shall identify the same patentable invention").

In asserting its diligence on Fischhoff claim 3 in this case, Mycogen relies on the same "problem region" research that the Federal Circuit rejected with respect to Adang claim 1. According to Monsanto, because Adang claim 1 and Fischhoff claim 3 are "the same patentable invention," the Federal Circuit's finding of no diligence as to Adang claim 1 as a matter of law means no diligence as to Fischhoff claim 3, so that Mycogen is collaterally estopped from arguing otherwise.

Monsanto's logic is simple and attractive, but ultimately it is not persuasive. Mycogen does not challenge the APJ's definition of the interference count. Mycogen argues instead that being classified as the "same patentable invention" does not preclude, at least as a matter of law, separate claims from being supported by different evidence of diligence. It is possible, Mycogen argues, for a count to portray "two mutually exclusive, but patentably indistinct, sets of claims." Mycogen Br. at 24, quoting *In re Kroekel*, 803 F.2d 705, 710 (Fed. Cir. 1986). According to Mycogen, this is such a case because Fischhoff claim 3 requires removal of ATTTA and polyadenylation signals from the *Bt* gene, but does not require "increasing the number of plant-preferred codons" as required by Adang claim 1. Monsanto counters:

> If the two claims define the same invention, then a lack of diligence towards one necessarily means a lack of diligence towards the other.

> Stated another way, if there were a subset of work, such as a search for problem regions in the gene, that was required to reduce to practice Fischhoff claim 3, but not Adang claim 1, then they could not define the same invention.

Monsanto Reply at 6.  Monsanto's argument assumes an interpretation of "same patentable invention" to support its conclusion.  That assumption is as much in need of support as the conclusion that rests on it, and Monsanto has not provided that support.  Section 1.601(n) defines "same patentable invention" as follows: "Invention 'A' is the *same patentable invention* as Invention 'B' when Invention 'A' is the same as (35 U.S.C. 102) or is obvious (35 U.S.C. 103) in view of Invention 'B' assuming Invention 'B' is prior art with respect to Invention 'A'."  37 C.F.R. § 1.601(n).  Monsanto has not shown why this regulatory characterization of "same patentable invention" or any judicial interpretation of it requires as a matter of law that the scope of relevant evidence of diligence must be congruent for separate claims that are part of the same interference.

Monsanto's argument is not consistent with the reasoning of the Federal Circuit in the California appeal or the Board in the interference under review.  Both the Federal Circuit in its treatment of Adang claim 1 and the Board in its treatment of Adang claim 1 and Fischhoff claim 3 placed decisive emphasis on specific steps required by the different claims to reduce the claimed invention to practice.

In the California appeal to the Federal Circuit, Monsanto had argued for its conception of Adang claim 1 based on a general description of the invention. Instead, the Federal Circuit focused on the specific limitation of increasing the number of plant-preferred codons in its analysis of Monsanto's conception of Adang claim 1:

> While we agree with Monsanto that [the evidence] establish[es] that Monsanto scientists had conceived the idea of a synthetic gene, that does not establish that they had conceived, as the claims require, that the gene would be modified by *increasing the number of plant-preferred codons rather than by eliminating particular destabilizing codon sequences.*

*Id.* at 1312-13 (emphasis added).

The Federal Circuit clearly viewed as important the distinction between eliminating destabilizing codon sequences and increasing plant-preferred codons. Eliminating destabilizing codon sequences is precisely what is claimed by Fischhoff claim 3. Monsanto has acknowledged that "Fischhoff claim 3 . . . does not expressly recite increasing the number of plant-preferred codons, but rather recites eliminating particular destabilizing sequences — namely plant polyadenylation and ATTTA sequences." Monsanto Br. at 17.

The Federal Circuit considered the distinction important in deciding the issue of diligence. The Federal Circuit found that evidence of Mycogen's "problem region" research did not constitute evidence of diligence toward reducing to

practice Adang claim 1.  Mycogen had argued for a finding of diligence based on a general description of the invention.  But the Federal Circuit focused its diligence analysis on, again, the specific limitation within Adang claim 1: increasing the number of plant-preferred codons:

> Mycogen argues that the district court erred when it concluded that looking for specific problem sequences to alter within the Bt gene did not constitute diligence in reducing to practice the invention of rebuilding the entire gene to make it more plant-like.  We disagree. The invention was not simply to modify the Bt gene so that a plant would express Bt toxin.  Instead, the invention was to devise a method of designing a synthetic Bt gene by analyzing the coding sequence of the native Bt gene and modifying a portion of that coding sequence so that the modified sequence would contain *a greater number of plant-preferred codons.*  Accordingly, Mycogen's research efforts directed at identifying specific problem areas that were inhibiting expression did not constitute diligence toward reduction to practice of the claimed invention.

252 F.3d at 1315 (emphasis added).  Under the Federal Circuit's reasoning, evidence of diligence toward reducing Adang claim 1 to practice would account for the specific limitation of modifying codon sequences to achieve a greater number of plant-preferred codons.  This specific limitation is included in Adang claim 1, but it is not in Fischhoff claim 3.  Thus, the Federal Circuit's reasoning indicates that the diligence issue is not the same for Fischhoff claim 3 and for Adang claim 1, so that collateral estoppel would not apply.

The Board also did not view Adang claim 1 and Fischhoff claim 3 as indistinguishable for purposes of determining the relevant evidence available to support either claim:

It is important to note that the parties to this interference must be concerned with the scope of subject matter encompassed by count 2, not merely the subject matter encompassed by [Adang claim 1]. Accordingly, we are not bound in this interference by the conclusion of our reviewing court in *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d at 1314, that the evidence before the [district court] was insufficient to support a finding that Fischhoff conceived of the invention of [Adang claim 1] for purposes of summary judgment. While count 2 of this interference is indeed alternatively directed to [Adang claim 1], it is also alternatively directed to [Fischhoff claim 3].

Bd. Dec. at 65-66.

Because the evidence relevant to Fischhoff claim 3 could be considered in addition to and independently of evidence relevant to Adang claim 1, the Board identified an earlier date for Monsanto's conception of Count 2 than that identified by the Federal Circuit.  The Board explained:

[W]e compare the [evidence] as it relates to the invention of Count 2 as represented by Fischhoff's claims, not the invention of Count 2 as represented by Adang['s] claims.  Accordingly, we need not be overly concerned, as was the Federal Circuit in *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d at 1312-14, with Adang's claim limitations requiring 'a greater number of codons preferred by the intended plant host.'

Bd. Dec. at 67.  The Board proceeded to conduct two separate and distinct analyses of Mycogen's diligence with respect to Adang claim 1 and Fischhoff claim 3.  The Board focused on increasing plant-preferred codons in its analysis of Adang claim 1 and on eliminating destabilizing codon sequences in its analysis of Fischhoff claim 3.

In finding Mycogen's problem region research insufficient to show diligence for Adang claim 1, the Board described the key limitation of the claim as "greater number of codons preferred," and stated that "the modification step must 'result in a *higher number* of those codons whose frequency in the native Bt gene was lower than their frequency in the plant host.'"  Bd. Dec. at 89, quoting *Mycogen Plant Sci. Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330 (Fed. Cir. 2001) (affirming Delaware district court's construction of claim identical in relevant part to Adang claim 1) (emphasis in original).  The Board concluded that Mycogen's research did not "reasonably suggest 'modifying a portion of the coding sequence to yield a modified sequence which contains a greater number of codons preferred by the intended plant.'"  Bd. Dec. at 130, quoting Adang claim 1.

In finding the evidence of Mycogen's problem region research insufficient to show diligence for Fischhoff claim 3 (a finding challenged by Mycogen in this appeal), the Board described the relevant features of the claim as follows: Fischhoff claim 3 involves "modifying the structural gene sequence of a native *Bt* gene encoding insecticidal protein by both (1) removing polyadenylation signals from the structural gene sequence while retaining a sequence encoding insecticidal protein, and (2) removing ATTTA sequences from the structural gene sequences while retaining a sequence encoding insecticidal protein."  Bd. Dec. at 136.

The Board stated that it "fail[ed] to see" how Mycogen's problem region research "show[s] that [Mycogen] exercised reasonable diligence towards reducing the invention of [Fischhoff claim 3] to practice. . . .   Neither Dr. Adang nor Dr. Murray were reasonably certain that mechanisms related to polyadenylation signals and ATTTA sequences caused the premature termination of transcription and inefficient expression of native *Bt* genes encoding insecticidal protein in plants." Bd. Dec. at 136-37.

In its analysis of Mycogen's diligence toward Adang claim 1, the Board did not refer at all to eliminating destabilizing polyadenylation and ATTTA codon sequences.  In its analysis of Mycogen's diligence toward Fischhoff claim 3, the Board did not refer at all to increasing plant-preferred codons. The Board treated the matters as distinct for evidentiary purposes, as had the Federal Circuit.  See 252 F.3d at 1313.

Monsanto moved for summary judgment on the issue of Mycogen's diligence towards Fischhoff claim 3 solely on the grounds of collateral estoppel.  It based its collateral estoppel defense on an interpretation of "same patentable invention" that has some appeal but little direct support.  That interpretation is at odds with the analysis of the Board and is not supported by the reasoning of the Federal Circuit in the California appeal.  Monsanto has not shown that, as a matter of law, diligence toward Adang claim 1 is the same issue for purposes of collateral estoppel as diligence toward Fischhoff claim 3.  Accordingly, Monsanto's motion

for summary judgment on the issue of priority of invention for Fischhoff claim 3 is denied.  The denial of course reflects no indication of the court's view of the ultimate merits of the issue.

II.    *Unpatentability of Fischhoff in View of Barton*

In this section 146 action for judicial review, Mycogen contends that the Fischhoff application cannot be patentable because the prior work of Barton either anticipated Fischhoff or rendered the Fischhoff invention obvious.  Monsanto has moved for summary judgment on this issue on two grounds:  (1) Mycogen failed to preserve the issue properly in the administrative proceedings; and (2) Mycogen is judicially estopped from asserting the work of Barton as prior art to Fischhoff. For purposes of Monsanto's motion, the court assumes following facts are true; most are taken from the administrative record before the Board.

A.     *Undisputed Facts:  Patentability of Fischhoff in View of Barton*

As one might imagine, the Patent and Trademark Office has little interest in resolving priority disputes between inventions claimed by the same inventor or owner.   The regulations governing interference proceedings provide in part: "Unless good cause is shown, an interference shall not be declared or continued between . . . applications owned by a single party."   37 C.F.R. § 1.602(a). Accordingly, early in the interference, the APJ ordered Monsanto to elect whether to proceed with its Fischhoff application or its Barton application.   Monsanto elected Fischhoff, but did so under protest and appealed the order to the Federal Circuit.   The Federal Circuit found that because the interference count had not yet been finalized and discovery was not complete, Monsanto could not determine which of its applications, Fischhoff or Barton, would be the best evidence of priority.   Accordingly, Monsanto had shown good cause under § 1.602 to continue with both applications, and the case was remanded with orders that Barton be reinstated in the interference.   *Barton v. Adang*, 162 F.3d 1140, 1146 (Fed. Cir. 1998).

While that appeal was pending, Mycogen filed a motion ("Motion No. 3") seeking the APJ's authorization to assert the unpatentability of Fischhoff's claims in the event depositions and other discovery showed that Fischhoff's claims were unpatentable because Barton's work anticipated them or rendered them obvious. Mycogen also sought an order for discovery to support its assertion.

On September 4, 2002, after the Federal Circuit's decision in *Barton v. Adang* ordering the reinstatement of Barton, the APJ issued a written opinion redeclaring the interference and replacing the original count with what became the final "Count 2" between the Adang patent versus either the Fischhoff application *or* the Barton application. In the same opinion, the APJ denied Mycogen's Motion No. 3 and gave the parties 30 days to identify any additional preliminary motions they intended to file in the redeclared interference. Mycogen filed no motions during the 30-day period.

Several months after the expiration of the 30-day period, in July 2003, Monsanto elected to proceed with Fischhoff and dropped Barton as the first to invent the subject matter of Count 2. Four days after Monsanto elected Fischhoff, Mycogen filed a request renewing its desire to assert the unpatentability of Fischhoff in view of Barton ("Paper 199"). The APJ denied the request as untimely in light of the 30-day deadline. PTO Paper 212 at 10-11. In its final decision of January 29, 2004, the Board concluded that the APJ had not abused his discretion in denying as untimely Mycogen's challenge to Fischhoff based on Barton in Paper 199.

B.    *Whether Mycogen Preserved the Issue*

Monsanto argues that Mycogen failed to preserve the issue of Fischhoff's patentability in view of Barton because it did not raise the issue in accordance

with the PTO's interference rules.  Monsanto Br. at 7, citing *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) ("In order for an issue to have been raised adequately so that it qualifies for consideration in a § 146 proceeding, the issue should have been raised as specified in the PTO's interference rules").

Section 1.636(a) of the PTO rules states in relevant part:  "A preliminary motion under § 1.633 (a) through (h) shall be filed within a time period set by an administrative patent judge."  According to Monsanto, Mycogen's failure to adhere to the APJ's 30-day deadline set on September 4, 2002, for identifying additional preliminary motions violated section 1.636(a), so that the issue does not qualify for consideration in this section 146 action.  The court does not agree because Mycogen could not reasonably have adhered to the 30-day deadline.  The APJ rejected Mycogen's Motion No. 3 as premature because Barton was still in the interference.  Barton was not out of the interference until after the new 30-day deadline had passed.  The APJ's enforcement of the new 30-day deadline under these circumstances was an abuse of discretion, for it had the effect of preventing Mycogen from ever raising a legitimate issue.

Mycogen does not argue that the APJ erred in denying Motion No. 3.  It argues here, as it argued to the Board, that the APJ abused his discretion in denying Paper 199 as untimely.  An abuse of discretion occurs "if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a

record that contains no evidence on which the Board could rationally base its decision." *Eli Lilly & Co. v. Board of Regents of Univ. of Washington*, 334 F.3d 1264, 1266-67 (Fed. Cir. 2003) (reviewing interference decision).  In light of the APJ's original reason for denying Motion No. 3, the decision to deny Paper 199 as untimely created and sprung a procedural trap that was arbitrary and amounted to an abuse of discretion.

In his September 4, 2002, order  redeclaring the interference, the APJ denied Motion No. 3 as premature because Barton was still part of the interference.  The APJ applied the reasoning of the Federal Circuit in *Barton v. Adang*, 162 F.3d at 1146.  The Federal Circuit had reasoned that, because of incomplete discovery and unresolved motions,  the scope of the count was too unsettled to enable Monsanto to identify the prior inventor among its claims in accordance with the standards of 35 U.S.C. § 102(g).  According to the APJ, this reasoning applied equally to Mycogen's request to adjudicate the prior inventor among Monsanto's two claims in accordance with the standards of section 102(g):

> Because Monsanto Company was improperly ordered to elect the prior inventor of Count 1 as between Barton and Fischhoff before the interference count was finalized, neither Fischhoff's nor Barton's claims . . . may be rejected under 35 U.S.C. § 102(g)/103 based on a forced election of the prior inventor of Count 1 by Monsanto Company at a time during the proceedings when "Monsanto could not determine which application, either Barton et al. or Fischhoff et al., would be the best evidence to establish priority." [*Barton v. Adang*, 162 F.3d at 1146].

PTO Paper 148 (Docket No. 65, Attachment 4, Ex. D at 31).  The APJ appears to have considered Mycogen's Motion No. 3 not only premature in light of the Federal Circuit's reasoning, but also an inappropriate matter to be raised at all during the preliminary motions stage of the proceeding so long as Barton was part of the interference.  According to the APJ:

> Because the Federal Circuit directed this interference proceeding to continue with both Fischhoff and Barton as parties "until the preliminary motions to finalize the count are decided by the Board and discovery is complete," *Barton v. Adang*, 162 F.3d at 1146 . . . the discovery [Mycogen] requests is here, and is generally, inappropriate before the preliminary motion stage of the interference proceeding has been completed.

*Id.* at 32.

In light of the Federal Circuit's reasoning, the APJ did not err by denying Mycogen's Motion No. 3 as premature.  The problem arose when the APJ later enforced his 30-day deadline for identifying additional motions.  The same conditions that had rendered Motion No. 3 premature – two Monsanto claims in the interference, incomplete discovery, pending motions – persisted throughout the 30-day period and well beyond.  (If those conditions had not persisted, the APJ would have been required under 37 C.F.R. § 1.602(a) to force Monsanto to choose between Fischhoff and Barton.  There no longer would have been good cause to continue with two applications owned by the same party.)  If Mycogen had filed a motion in that 30-day period to reconsider the request it made in Motion No. 3, the APJ's sound reasoning in denying the original Motion No. 3 would have

rendered the motion futile: both Barton and Fischhoff were still part of the interference.

After Monsanto elected to pursue only Fischhoff and to drop Barton, the situation changed.  The reasons for denying Motion No. 3 were no longer applicable, and Mycogen recognized this immediately.  Just four days after Monsanto elected to pursue only Fischhoff, Mycogen filed Paper 199 seeking reconsideration of Motion No. 3.

As the APJ and Board saw the issue, though, Mycogen had "ample opportunity" and "allowed that window of opportunity [to] close."  PTO Paper 212 at 10.  But under the APJ's and the Board's reasoning, the window closed before Mycogen's motion could even have become ripe for presentation.  The APJ's 30-day window closed while Barton was still part of the priority dispute, when Mycogen could not have raised the issue by preliminary motion.  Neither the APJ nor the Board indicate at what point in time between Motion No. 3 and Paper 199 Mycogen would have been able to have its request evaluated on its merits.  The asserted "window of opportunity" was illusory.

Monsanto counters in essence that even if refiling Motion No. 3 during the 30-day period was certain to meet with rejection, Mycogen's failure to reassert the request during the 30-day period amounts to a waiver for purposes of this appeal.  This argument is analogous to arguing that a party whose civil complaint has

been dismissed with leave to amend has waived the right to appeal any claims included in the dismissed complaint but not included in the amended complaint. The Seventh Circuit has observed that the latter argument

> has no foundation in the law of this Circuit (or any other of which we are aware). . . . [F]ailure to replead a dismissed claim "is not waiver[.] [I]t is prudence and economy [ ] for parties not to reassert a position that the trial judge has rejected.  Had the plaintiffs repleaded their . . . charge . . ., the judge would have dismissed the charge, not only with prejudice but with annoyance."

*Serritella v. Markum*, 119 F.3d 506, 512 n.6 (7th Cir. 1997), quoting *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 683 (7th Cir. 1990).  More generally, "[t]here is simply no rule or case law that requires litigants to move for reconsideration of an interlocutory ruling in order to avoid waiving a challenge to that ruling on appeal of a final decision."  *Walker v. Abbott Labs.*, 340 F.3d 471, 475 (7th Cir. 2003).

The Board found that the APJ did not abuse his discretion in denying Paper 199 as untimely.  The Board further noted that 37 C.F.R. § 1.645(b) provides that an untimely paper in an interference proceeding may be considered despite being untimely where the party seeking to have it considered shows good cause why the paper was not timely filed, or where the APJ or the Board is of the opinion that it would serve the interests of justice to consider the paper.  The Board found that Mycogen had not shown good cause and that the interests of justice would not be served by consideration of Paper 199.  The court disagrees.

Mycogen had argued to the Board that requesting reconsideration of Motion No. 3 any time before Monsanto made its election "would clearly have been premature under the APJ's rationale set forth in the Order redeclaring the interference (Paper No. 148, pages 30-32).  Having requested reconsideration immediately after the election was filed cannot properly be deemed belated."  Bd. Dec. at 188, quoting Mycogen Br. at 62-63.

The Board responded:  "We fail to comprehend why it was reasonable for [Mycogen] to presume" that a request to reconsider Motion No. 3 would clearly have been premature under the APJ's rationale denying Motion No. 3.  Bd. Dec. at 189.  The Board observed that the reasonableness of that presumption "vanished" when the APJ expressly ordered the parties to identify additional preliminary motions that needed to be filed in the redeclared interference.  *Id.*

In fact, however, the reasonableness of that presumption had not vanished at the time the APJ called for additional motions.  As described above, the APJ's stated rationale for denying Motion No. 3 remained operative so long as both Barton and Fischhoff were part of the interference.  The APJ's call for "additional" motions did not affect at all the reasonableness of that presumption, much less make it vanish.  Mycogen's argument before the Board was  correct and amounts to good cause why it did not present the Barton issue again within the APJ's new 30-day period for preliminary motions.

The interests of justice are served by allowing Mycogen to challenge the patentability of Fischhoff's claim.  The APJ's denial of Paper 199 effectively denied Mycogen the opportunity to challenge the issue of the patentability of Fischhoff's claim, an issue that Mycogen properly raised.  See *Perkins v. Kwon*, 886 F.2d 325, 329 (Fed. Cir. 1989) ("The public interest in the benefits of a patent system is best met by procedures that resolve administratively questions affecting patent validity that arise before the PTO.").    An APJ is not compelled under all circumstances to determine issues of patentability in a section 135 interference.  *Berman v. Housey,* 291 F.3d 1345, 1352-53  (Fed. Cir. 2002).  Nevertheless, the Federal Circuit has described the Board's obligation to consider patentability issues as "nearly mandatory when those issues have been fairly raised and fully developed before the Board." *In re Gartside*, 203 F.3d 1305, 1317 (Fed. Cir. 2000).

In sum, the APJ's denial of Paper 199 as untimely was not the result of the APJ's considered judgment regarding the merits of the request.  Rather, it had the effect of springing a procedural trap on Mycogen by enforcing the 30-day deadline that expired while Barton was still part of the interference.  This basis was arbitrary and it is clearly unreasonable to deny a party any opportunity to present an issue it properly seeks to present within the case.  The APJ and the Board abused their discretion in denying Mycogen's Paper 199 as untimely.

C.    *Judicial Estoppel*

Monsanto next argues that Mycogen is judicially estopped from asserting the work of Barton as prior art to that of Fischhoff on the theory that Mycogen's position is inconsistent with the position it had convinced the Board to adopt in the administrative proceeding.  The court disagrees.

The doctrine of judicial estoppel "aims to prevent a party that prevails in one lawsuit on one ground from repudiating that same ground in another lawsuit." *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005).[3] Judicial estoppel is intended to "protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992).  The doctrine is to be applied "flexibly with an eye toward protecting the integrity of the judicial process." *Jarrard*, 408 F.3d at 914, citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004); see also *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998) (judicial estoppel serves to "reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant").

The Seventh Circuit has identified four factors relevant to whether judicial estoppel applies:

---

[3]The law of the Seventh Circuit governs the applicability of judicial estoppel in this case.  See *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1302 (Fed. Cir. 2002) ("Whether judicial estoppel applies is a matter of regional circuit law."), citing *Wang Labs., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 358 (Fed. Cir. 1992).

> (1)     whether the party's position is clearly inconsistent with a position earlier taken;
>
> (2)     whether the party asserting the inconsistent position prevailed on the earlier position, so that judicial acceptance of an inconsistent position would create the perception that either the first or second tribunal was misled;
>
> (3)     whether the party asserting the inconsistent position would gain unfair advantage or impose unfair disadvantage on the opposing party if not estopped; and
>
> (4)     whether the operative facts are the same in both cases.

*Jarrard*, 408 F.3d at 914-15.


As to the first factor, Mycogen's desire to challenge the patentability of Fischhoff's claim in view of Barton is not inconsistent with any position it asserted at the administrative proceedings.  Monsanto argues that "for Mycogen to assert that Barton's work is prior art it would have to seek to overturn the same judgment against Barton that [Mycogen] sought to have the Board enter."  Monsanto Br. at 14.  This argument is without merit.  Mycogen urged the Board to force Monsanto to choose between its two applications as required by 37 C.F.R. § 1.602(a), not based on any argument that Barton was not prior art. After Monsanto chose to pursue Fischhoff, Mycogen urged the Board to enter judgment against Barton.  Mycogen did so based on Monsanto's voluntary election of Fischhoff as the first inventor, not based on any argument on the merits by Mycogen that Barton was not prior art.  Mycogen could consistently urge the APJ to force an election and then to enter judgment against Barton after an election,

while also maintaining that Barton is prior art – *i.e.*, Mycogen could argue that Monsanto made the wrong choice. That is exactly what Mycogen did in the paper in which it requested dropping Barton from the interference. Mycogen wrote: "if the interference proceeds to a Final Hearing without Barton as a party, then Adang should be permitted to establish that Fischhoff's involved claims are unpatentable to Fischhoff under 35 U.S.C. § 102(g) in view of Barton's invention." Mycogen Paper 199 at 3.

Monsanto quotes Mycogen as arguing to the APJ that after Monsanto's forced election of Fischhoff over Barton, "the acts of Barton *et al.* should not be available to either party in this interference as a means to assert the unpatentability of the other party's claims." Monsanto Br. at 12, quoting Motion No. 3 at 1 (Docket No. 65, Attachment 3). According to Monsanto, this statement is inconsistent with Mycogen's present position seeking to challenge Fischhoff in view of Barton. However, the statement comes from Motion No. 3 and Mycogen followed that statement with this:

> Nonetheless, in the event that the APJ believes that Barton *et al.* should be available to either party to be asserted as § 102(g)/103 prior art, and in order to avoid any assertion of estoppel as to [Mycogen's] raising Barton *et al.* against Fischhoff *et al.* in other litigation now pending or that may later be brought, [Mycogen] feels compelled to file this Motion.
>
> [Mycogen] therefore contingently moves under 37 C.F.R. § 1.633(a) for judgment against [Fischhoff] . . . if deposition and documentary discovery should show that the claims are not patentable to Fischhoff *et al.* in view of the possible prior invention of Barton *et al.*

Motion No. 3 at 1-2 (Docket No. 65, Attachment 3).  Read in its full context, Mycogen's position is not inconsistent with any position it has taken in this action.

The remaining factors are rendered moot by the lack of inconsistency between Mycogen's earlier and later positions.  Monsanto's invocation of judicial estoppel also fails in light of the anti-fraud purposes of the doctrine.  "Judicial estoppel is intended to protect the courts from the litigatory shenanigans that would result if parties could, without limitation or consequence, swap litigation positions like hats in successive cases based on simple expediency or self-benefit.  Judicial estoppel shields the courts from being the instrument of such misconduct."  *Jarrard*, 408 F.3d at 915.  This court does not see evidence of shenanigans or misconduct in Mycogen's positions before the Board and before this court.  Mycogen has always challenged the validity of Fischhoff in light of Barton.  For all of these reasons, Monsanto's motion for summary judgment on the issue of the patentability of Fischhoff in view of Barton is denied.  The issue will be litigated as part of this case.

III.   *Monsanto's Motion to Exclude the Testimony of Dr. Falkinham*

Mycogen has submitted two reports by Joseph O. Falkinham III, Ph.D. Docket No. 65, Exhibits M and N.  In the reports, Dr. Falkinham opines as to the relative conception dates, reasonable diligence, and reduction dates of the

invention corresponding to Count 2 by various Mycogen and Monsanto scientists. Among Dr. Falkinham's conclusions is that Barton reduced the invention to practice before Fischhoff and that Fischhoff was not diligent during the critical period in reducing  the invention to practice.  Ex. M at 35-38.  Mycogen seeks to offer this opinion to show that Fischhoff's claim is unpatentable in view of Barton.

Monsanto argues that Dr. Falkinham's testimony is inadmissible to show that Barton's work is prior art because Dr. Falkinham failed to provide an element-by-element comparison of the claims of Fischhoff and Barton.  Monsanto Br. at 15-16.  Monsanto argues that such a comparison is required as a matter of law to attack the patentability of one claim with an allegedly prior claim.  The authorities cited by Monsanto for this proposition do not support its application in this case.

This case is an appeal of a 35 U.S.C. § 135 interference action before the APJ and Board.  The APJ declared an interference and designated Fischhoff and Barton within a single count.  That designation, not appealed by either party to this case, established Fischhoff and Barton as the same patentable invention under 37 C.F.R. § 1.601(f).  This means that, assuming one claim is prior art with respect to the other, the other is unpatentable as either patentably indistinct under section 102 or obvious under section 103.  See 37 C.F.R. § 1.601(n).  In other words, the element-by-element comparison of the claims has been made by the APJ in the process of defining the count.

None of the cases cited by Monsanto involved a section 135 action with an underlying interference and designation of a count. *In re Schreiber*, 128 F.3d 1473 (Fed. Cir. 1997), was an appeal from a PTO Board's rejection of four claims of a patent application as anticipated by an issued patent. The court stated that "to anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *Id.* at 1477, citing *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995). Such a requirement would be redundant if an APJ had, without objection by the parties, designated the claims within a count in an interference, as happened here.

Other cases cited by Monsanto also either expressly or implicitly require that competing claims be compared according to their elements. See, *e.g.*, *Oxford Gene Technology Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436 (D. Del. 2004) ("The second step in evaluating the validity of a patent is to perform an element-by-element comparison of each claim to each prior reference."). But those were patent infringement actions with no underlying interference or designated count.

*Slip Track Systems, Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1265 (Fed. Cir. 2002), also cited by Monsanto, involved an interference proceeding brought directly before the district court under 35 U.S.C. § 291. It did not involve an appeal from a section 135 interference where a count had been designated by an APJ. In *Slip Track*, the Federal Circuit panel stated:

This court has not yet had occasion to determine whether district courts handling interfering patent suits under § 291 must define this interfering subject matter in a way similar to a count. In *Environ Products, Inc. v. Furon Co.*, involving a § 291 interference, this court explained that "[t]he parties and the court agreed on the description of the common subject matter that would serve as the basis for determining who was the original inventor," and then cited to the description of that subject matter that was provided to the jury. 215 F.3d 1261, 1263 (Fed. Cir. 2000). Thus in *Environ* this court did not need to address this question. In *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316 (Fed. Cir. 2001), this court faced a similar problem in attempting to determine what, in fact, had to be reduced to practice, where there was a priority dispute about whether Monsanto's inventors had first reduced to practice the claimed subject matter of two of Mycogen's patents. *Id.* at 1331-33. The court there distinguished the situation from one arising under § 135 before the PTO, or one arising under § 291 before a district court. It explained:

> This case before us does not fall into either category. It is not an appeal of a section 135 interference proceeding, and it does not involve a section 291 action. Instead, we are comparing two issued Mycogen patents, the '600 and '862 patents, with the work performed by Monsanto's scientists. *Without the benefit of written claims for the Monsanto efforts, it is difficult to develop a "count" encompassing both party's [sic] inventions, as would commonly be done in an interference proceeding.*
>
> In this situation, it is therefore appropriate to place the focus of inquiry upon the specific claims of the '600 and '862 patents as representing the invention at issue. [The] claims may then be used to determine whether or not the work performed by Monsanto constitutes a reduction to practice that meets the limitations of the claimed invention.

*Id.* at 1332-33 (emphasis added).

Thus, the *Mycogen* court, highlighting the import of having a single textual description of the invention for the assessment of priority, assumed that even in district court proceedings under § 291 a description of the interfering subject matter analogous to a count would be developed. While we need not resolve this question in its

entirety, it is necessary for us to hold that given interfering patents, a single description of the interfering subject matter is necessary for a determination of priority.

304 F.3d at 1264.

In this case, the APJ's definition of Count 2 and the resulting designation of the claims of Fischhoff and Barton as the same patentable invention supplied the necessary "single textual description" encompassing both claims. Count 2 rendered unnecessary an element-by-element comparison of the claims as a foundation for the opinion testimony of Dr. Falkinham relating to those claims. Monsanto's motion to exclude the testimony of Dr. Falkinham is denied.

IV.   *Mycogen's Motion to Exclude the Testimony of Dr. Goolkasian*

Monsanto has submitted the report of Dr. John T. Goolkasian, a patent attorney and former patent examiner with a Ph.D. in chemical engineering. Goolkasian Report.  Docket No. 70, Ex. 5.  Monsanto anticipates Dr. Goolkasian will testify about:  (1) patent office practice and procedure; (2) "relevant events during the prosecution of Mycogen's '831 patent"; (3) "relevant events during the interference" at issue; (4) "events during the interference which might impact Mycogen's ability to raise Barton" as prior art to Fischhoff.  Def. Br. at 4.  Mycogen has moved to exclude Dr. Goolkasian's testimony, challenging his qualifications to opine on the stated matters and asserting that his report draws legal conclusions of no help to a trier of fact.

Pursuant to its obligations under Rule 702 of the Federal Rules of Evidence, as articulated by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the court has carefully reviewed the Goolkasian report. At this time, the court grants Mycogen's motion to exclude Dr. Goolkasian from testifying about the matters contained in his report. Substantial portions of the report will not assist the trier of fact. Most of the report amounts to legal arguments and conclusions that merely echo Monsanto's briefs and/or address questions of law for this court to determine.

The report covers three substantive areas. Paragraphs 13 through 28 explain PTO practices and procedures, including how patents are issued, the patent application process, standards of patentability, interference proceedings, concepts of prior art, enablement and novelty, the application of relevant statutory provisions, and so forth. At this point, it does not appear that any of this will be of assistance to the trier of fact (the court), which will have the able assistance of the parties' counsel to help it understand these matters.

Paragraphs 29 through 101, taken as a whole, are essentially a legal brief. Dr. Goolkasian's account of the prosecution history of the '831 patent in paragraphs 29 through 69 is legal argument, replete with legal opinions and conclusions, especially on the issue of enablement with respect to the '831 patent. His discussion in paragraphs 70 through 93 of the interference and the Board's decision on priority of invention is also legal argument endorsing what he views

as the Board's careful reasoning, astute logic, and sound conclusions in favor of Monsanto.  His account in paragraphs 94-101 of the APJ's denial of Mycogen's Motion No. 3 and Paper 199 is scarcely distinguishable from Monsanto's briefs on this issue and amounts to a "needless presentation of cumulative evidence." Fed. R. Evid. 403.

As to the numerous legal conclusions in Dr. Goolkasian's report, "[a]n expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all."  *Nutrition 21 v. United States*, 930 F.2d 867, 871 n. 2 (Fed. Cir. 1991); see also *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("The district court correctly ruled that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible."), citing *United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996).

Some of Dr. Goolkasian's legal opinions do not draw ultimate conclusions. The Seventh Circuit has stated that "there are some circumstances in which experts can offer legal opinions," though the court has not exhaustively catalogued them.  *Sinclair*, 74 F.3d at 757 n.1.  As an example, in *Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187 (7th Cir. 1992), the Seventh Circuit held that a trial court had not abused its discretion in admitting expert testimony containing legal argument and opinion.  The witness's legal opinions were included in testimony recounting

events during the drafting of a contract and during which the witness was counsel to one of the parties:

> While the basic premise that an expert may not testify to the legal significance of a contract is unavoidable, the district court did not abuse its discretion in finding that Lewis testified as a fact witness as well as an expert witness. The district court found that Lewis' testimony was not necessarily a legal conclusion which should be excluded because the issue was a determination of what transpired during the course of the drafting of the Purchase Agreement. Lewis' testimony related more to issues of fact than to opinion.

*Id.* at 1196. In this case, nothing in the record suggests that Dr. Goolkasian is competent to testify as a fact witness.

The court is confident that counsel will develop all of the legal arguments needed for a fair and accurate resolution of this case. Accordingly, Mycogen's motion to exclude the testimony of Dr. Goolkasian is granted. This decision is without prejudice, however, to the possibility that the court could revisit the admissibility of limited portions of his report if Monsanto believes they are essential at later stages of this case, keeping in mind the court's reasoning in excluding his report as it now stands. Dr. Goolkasian's qualifications to testify to such matters can be evaluated when and if that time comes. Cf. *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) ("A trial judge has sole discretion to decide whether or not he needs, or even just desires, an expert's assistance to understand a patent.").

*Conclusion*

On the issue of priority of invention, Monsanto has not shown that Mycogen is collaterally estopped by *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001), from asserting that its problem area research constituted reasonable diligence toward reducing Fischhoff claim 3 to practice.  On the issue of the patentability of Fischhoff in view of Barton, the APJ and the Board abused their discretion in denying Mycogen the opportunity to raise this issue on the merits during the administrative proceedings.  Monsanto's motions for summary judgment are accordingly denied.  Monsanto's motion to exclude the testimony of Dr. Falkinham is denied for the reasons stated.  Mycogen's motion to exclude the testimony of Dr. Goolkasian is granted, subject to the possibility of revisiting the issue as to a few limited opinions at later stages of this case.


So ordered.


Date: August 11, 2005

_David F Hamilton_

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Jeff M. Barron
BARNES & THORNBURG
jeff.barron@btlaw.com

Stephen Eugene Edwards
HOWREY LLP
edwardss@howrey.com

James M. Hinshaw
BINGHAM MCHALE LLP
jhinshaw@binghammchale.com

Robert M. Isackson
ORRICK HERRINGTON & SUTCLIFFE LLP
rmisackson@orrick.com

Craig Robert Kaufman
ORRICK HERRINGTON & SUTCLIFFE LLP
ckaufman@orrick.com

Donald E. Knebel
BARNES & THORNBURG
donald.knebel@btlaw.com

Susan Kelly Knoll
HOWREY LLP
knolls@howrey.com

Richard William Mark
ORRICK HERRINGTON & SUTCLIFFE LLP
rmark@orrick.com

Brad R. Maurer
BINGHAM MCHALE, LLP
bmaurer@binghammchale.com

Mary Veronica Mullally
ORRICK, HERRINGTON & SUTCLIFFE, LLP
vmullally@orrick.com

Yoo-Sun Park
HOWREY LLP
parky@howrey.com

Deborah Pollack-Milgate
BARNES & THORNBURG
dmilgate@btlaw.com

Steven G. Spears
HOWREY LLP
spearss@howrey.com

Todd G. Vare
BARNES & THORNBURG
todd.vare@btlaw.com